# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-01000 |
| | ) | |
| v. | ) | |
| | ) | |
| NAVORI SA AND MELDCX PTY LTD, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Navori SA ("Navori") and meldCX Pty Ltd. ("meldCX" or collectively "Defendants") for infringement of United States Patent Nos. 10,360,571 (the "'571 Patent"),  12,039,550 (the "'550 Patent"), 11,042,890 (the "'890 Patent"), and 12,026,731 (the "'731 Patent") (collectively the "Asserted Patents").

## THE PARTIES

1.     Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.     Upon information and belief, Defendant Navori is a company organized and existing under the laws of India, with a principal place of business located at Avenue Mon-Repos 22, 1005 Lausanne, Switzerland and may be served pursuant to the provisions of the Hague Convention.

3.     Upon information and belief, Defendant meldCX is a company organized and existing under the laws of Australia, with a principle place of business located at Level 3 / 534

Church Street, Richmond, VIC 3121, Australia and may be served pursuant to the provisions of the Hague Convention.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

5.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

6.      Defendants are subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Eastern District of Texas ("District"), including conduct giving rise to this action.

7.      Defendants have conducted and do conduct business within the State of Texas.

8.      Defendants have committed, and continue to commit, acts of infringement in this District, have conducted business in this District, and/or have engaged in continuous and systematic activities in this District.

9.      This Court has personal jurisdiction over Defendants at least because Defendants have made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and have placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. Defendants, thus, have committed and continue to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

10.    This Court likewise has personal jurisdiction over Defendants at least because, on information and belief, Defendants have committed acts within this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

11.    This Court has specific personal jurisdiction over Defendants in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Defendants' voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(3) because Defendants are foreign corporations subject to suit in any district.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

13.    Alpha Modus Corp. specializes in the development of innovative retail technologies.

14.    At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

15.    Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

16.    Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

17.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

18.    The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

19.    The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

20.    The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

21.    The '571 Patent is valid and enforceable.

22.    The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

23.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

24.     The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



*FIG. 1*



*FIG. 2*

25.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

26.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices;
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,
    (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,
(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,
(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons

who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

(ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

(iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '550 PATENT

27.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit B.

28.    The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

29.    The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

30.    The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

31.     The '550 Patent is valid and enforceable.

32.     The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real time—leveraging technologies such as MAC-address tracking, eye tracking, object recognition of goods on shelves, open APIs, and an advertising broker rules engine—to drive sales via engaging, personalized digital customer experiences.

33.     The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and personalized outreach strategies.

34.     The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

35.     The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver on-the-spot, personalized outreach via interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

36.     The '550 Patent describes and claims a specific system architecture that includes information monitoring devices (e.g., MAC tracking, eye tracking, object identification technologies) to gather and analyze real-time behavioral and demographic data, which then drives

interactive outputs like demographic-aware displays, assistance prompts at shelves, and purchase facilitation.

37.   Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of persons, wherein,
    (i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,
    (ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and
    (iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and
        (B) the product interaction information is based upon type of interactions the persons had with one or more products, and
    (iv) the gathered information further comprises gathered object identification information, wherein
        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and
        (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;
(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein
    (i)  the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,
(c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of
    (i)  engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,
    (ii) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second

person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

(iii) provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

(iv) provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## THE '890 PATENT

38.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

39.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

40.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

41.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

42.     The '890 Patent is valid and enforceable.

43.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

44.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

45.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



*FIG. 1*



*FIG. 2*

46.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

47.    Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and
    (iii) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering object identification information of a product that the person is interested in purchasing, and
        (B) gathering sentiment information of the person with respect to the product;
(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and
(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of
    (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,
    (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,
    (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,
    (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail

store or by sending the marketing or advertising information to a
mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product,
wherein the coupon is either a printed out coupon or a digital coupon.

## THE '731 PATENT

48.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and

Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731

Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products,"

including the right to sue for all past, present, and future infringement. A true and correct copy of

the '731 Patent is attached to this Complaint at Exhibit D.

49.    The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on

January 23, 2023.

50.    The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1,

20022.

51.    The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair

examination.

52.    The '731 Patent is valid and enforceable.

53.    The '731 Patent introduces a novel method for obtaining an information analysis of

a shopper's activities, for tracking the shopper using information monitoring devices to determine

location, and for providing targeted communications to that shopper based on their shopping

history and real-time location.

54.    The '731 Patent addresses the emerging challenges in the retail sector, particularly

for brick-and-mortar stores, in the context of delivering personalized marketing and advertising

tied to in-store behavior and purchase activity. The patent provides innovative solutions for

enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

55.     The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

56.     The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

57.     The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

58.     Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
    (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
    (ii) the gathered information comprises gathered product interaction information of the person, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and
        (B) the product interaction information is based upon shopping by the person of one or more first products,

(b) tracking the person using one or more second information monitoring devices to determine the location of the person;

(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises

(i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and

(ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of

(A) a product communication of marketing or advertising information regarding the product,

(B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

(E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## **DEFENDANTS**

59.    Defendant Navori is an international software solutions company headquartered in Lausanne, Switzerland, focused on helping businesses transform customer engagement and operations through its enterprise-grade digital signage and computer vision technologies.

60.    Navori emphasizes that it is research and development driven, with decades of investment in emerging technologies such as digital signage CMS platforms, real-time audience measurement, artificial intelligence, and computer vision.

61.    Navori's stated goal is to deliver solutions that automate the distribution and personalization of content, improve operational efficiency, and enhance the in-store and out-of-home customer experience for enterprises at global scale.

62.    In August of 2025, Navori completed its acquisition of Signagelive.

63.     Defendant meldCX is an international software solutions company with operations in Australia, the United States, the United Kingdom, and the Philippines, focused on helping businesses achieve digital transformation through its artificial intelligence and computer vision platforms.

64.     meldCX emphasizes that it is research and development driven, particularly in emerging technologies such as AI, data science, computer vision, and Internet of Things (IoT) applications that support retail, banking, and enterprise solutions.

65.     meldCX's stated goal is to deliver solutions that automate audience measurement, improve operational efficiency, scale to meet enterprise requirements, and create better customer experiences through real-time analytics and intelligent engagement.

66.     Navori's Signagelive digital signage platform and meldCX's Viana AI-powered Analytics Platform, which encompasse "an AI powered toolset tailored to meet all you needs when it comes to machine vision, optical character recognition, image recognition, pattern recognition, facial recognition and object detection and classification" comprise the "Accused Products" that infringe the Asserted Patents in this case.





https://signagelive.com/discover-the-power-of-data-analytics-with-ai-powered-signagelive-and-meldcx-viana-solution/

67. The Accused Products are described as operating in various industries including retail:



## Retail

Although, in recent years, the advent of analytics-driven online retailing has left "bricks and mortar" retailers at a disadvantage, smarter Digital Signage content solutions, such as the one presented by Signagelive and Viana, are levelling the playing field. Digitalising physical stores, they are enabling retailers to offer the best of both online and High Street retail experiences.

As well as being able to create more immersive and dynamic store displays with life-like 4K HDR videos, imagery and live streams, retailers can now also ensure that their content delivers a personalised, tailor-made shopping experience. It is this customisation that, according to research from Accenture, is driving sales, with a reported 91% of consumers more likely to shop with brands that provide relevant offers and recommendations.

Through the integration of Signagelive with Viana, content can be personalised, based on demographics, mood, and even items of clothing and shoes. If Viana AI-enabled cameras are used, for example, to identify pre-defined brand labels on customers' shirts, Signagelive can trigger content to promote other complementary items from the same brand. Similarly, if certain pre-defined shoe types or caps are caught in the cameras' field of vision, retailers can use Signaglive to trigger promotional content on similar items.

https://signagelive.com/discover-the-power-of-data-analytics-with-ai-powered-signagelive-and-meldcx-viana-solution/

68.     The Accused Products are further described:



Powering digital transformation across almost every sector, Digital Signage networks are proving integral to business, with 80% of brands that use them recording a substantial increase in sales of up to 33%. Yet despite the clear value of Digital Signage, it can still be challenging to implement successfully. The reality is that, even when businesses have invested in the right Digital Signage hardware and software, they often don't display the right content.

It is precisely this need to deliver relevant content that has given rise to AI, and more specifically, computer vision systems. And it is why Signagelive has partnered with meldCX vision AI solution, Viana.

Through its integration with the Viana platform, Signagelive offers an ultra-smart Digital Signage solution, which empowers customers and enables them to make better data-driven decisions to drive engagement and sales.

https://signagelive.com/discover-the-power-of-data-analytics-with-ai-powered-signagelive-and-meldcx-viana-solution/

69.     The Accused Products practice the patented systems and methods of the Asserted

Patents.

70.    Defendants have been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this complaint.

71.    The financial gains accrued by Defendants through the use of Alpha Modus's patented technology have been substantial, providing Defendants with competitive advantages in the retail market.

72.    The benefits reaped by Defendants through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

73.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Defendants, which has led to significant commercial gains for Defendants at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '571 PATENT)

74.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

75.    Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the Accused Products.

76.    The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in Defendants' customer's retail stores.

77.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

78.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in stores.

79.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

80.    Defendants have directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

81.    The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

82.    Defendants' infringing activities are and have been without authority or license under the '571 Patent.

83.    As a direct and proximate result of Defendants' infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

84.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants has been aware of the '571 Patent and its infringement thereof. Despite this knowledge, Defendants has continued to make, use, sell, and offer for sale the Accused Products.

85.    Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

86.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

87.    Therefore, Defendants' infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

88.    As such, Defendants has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

89.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

90.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the filing of this Complaint, because they knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

91.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '571 Patent.

92.    Defendants' use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '571 Patent.

93.     Defendants' knowledge of the '571 Patent, combined with their ongoing use of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

94.     Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '571 Patent.

95.     Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves or in conjunction with their customers, one or more claims of the '571 Patent.

96.     As a direct and proximate result of Defendants' induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

97.     Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

98.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

99.     Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the Accused Products.

100.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

101.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

102.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer demographic or behavioral data, and generating personalized marketing or promotional content based on the collected information.

103.    Defendants have directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

104.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

105.    Defendants' infringing activities are and have been without authority or license under the '550 Patent.

106.    As a direct and proximate result of Defendants' infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

107.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '550 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

108.    Alpha Modus is informed and believes that Defendants knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness,

Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

109.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '550 Patent, despite their knowledge and understanding that their products and systems infringe the '550 Patent.

110.    Therefore, Defendants' infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

111.    As such, Defendants have acted and continue to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '550 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

112.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

113.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because they knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '550 Patent.

114.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '550 Patent.

115.    Defendants' use of the Accused Products demonstrate specific intent to induce infringement of the '550 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '550 Patent.

116.    Defendants' knowledge of the '550 Patent, combined with their ongoing use of the Accused Products, demonstrate Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

117.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '550 Patent.

118.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves or in conjunction with their customers, one or more claims of the '550 Patent.

119.    As a direct and proximate result of Defendants' induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

120.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

121.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

122.    Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

123.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

124.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

125.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

126.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

127.    Defendants have directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

128.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

129.    Defendants' infringing activities are and have been without authority or license under the '890 Patent.

130.    As a direct and proximate result of Defendants' infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

131.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '890 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

132.    Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

133.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '890 Patent, despite their knowledge and understanding that their products and systems infringe the '890 Patent.

134.    Therefore, Defendants' infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

135.    As such, Defendants have acted and continue to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

136.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

137.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because they

knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '890 Patent.

138.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '890 Patent.

139.    Defendants' use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '890 Patent.

140.    Defendants' knowledge of the '890 Patent, combined with their ongoing use of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

141.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' promotions and instructions, demonstrate Defendants' specific intent to induce infringement of the '890 Patent.

142.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves, or in conjunction with their customers, one or more claims of the '890 Patent.

143.    As a direct and proximate result of Defendants' induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

144.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

145.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

146.    Defendants have made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including the Accused Products.

147.    The Accused Products embody a method for obtaining an information analysis of the shopping activities of consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

148.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

149.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including store-specific promotions, coupons, advertising, and purchase options.

150.    The Accused Products allow Defendants to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

151.    Defendants have directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

152.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

153.    Defendants' infringing activities are and have been without authority or license under the '731 Patent.

154.    As a direct and proximate result of Defendants' infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

155.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants have been aware of the '731 Patent and their infringement thereof. Despite this knowledge, Defendants have continued to make, use, sell, and offer for sale the Accused Products.

156.    Alpha Modus is informed and believes that Defendants knew or were willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Defendants have acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

157.    Alpha Modus is informed and believes that Defendants have made no efforts to avoid infringement of the '731 Patent, despite their knowledge and understanding that their products and systems infringe the '731 Patent.

158.    Therefore, Defendants' infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

159.    As such, Defendants have acted and continue to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

160.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

161.    Defendants are liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because they knowingly induce, aid, and direct others to use the Accused Products in a manner that infringes the '731 Patent.

162.    Defendants' customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '731 Patent.

163.    Defendants' use of the Accused Products demonstrate specific intent to induce infringement of the '731 Patent. Defendants encourage, direct, aid, and abet the use and operation of the Accused Products in a manner that infringes the '731 Patent.

164.    Defendants' knowledge of the '731 Patent, combined with their ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Defendants' knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

165.    Defendants' actions and the manner in which the Accused Products are used by Defendants' customers, consistent with Defendants' instructions, demonstrate Defendants' specific intent to induce infringement of the '731 Patent.

166.    Alpha Modus is informed and believes, and on that basis alleges, that Defendants knew or were willfully blind to the fact that they were inducing others, including their customers and staff, to infringe by practicing, either themselves or in conjunction with Defendants, one or more claims of the '731 Patent.

167.    As a direct and proximate result of Defendants' induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

168.    Alpha Modus is entitled to recover from Defendants compensation in the form of monetary damages suffered as a result of Defendants' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

**JURY DEMAND**

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WHEREFORE, Alpha Modus prays for relief against Defendants as follows:

(A)    An entry of judgment that Defendants have infringed and are directly infringing one or more claims of each of '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent;

(B)    An entry of judgment that Defendants have infringed and are indirectly infringing one or more claims of each of the '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent;

(C)    An entry of judgment that the '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent are valid and enforceable;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Defendants' infringement of the '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that Defendants' infringement has been willful, wanton, deliberate, and egregious;

(G)    A determination that the damages against Defendants be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)    A finding that this case against Defendants is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)    An accounting of all infringing sales and revenues of Defendants, together with post judgment interest and prejudgment interest from the first date of infringement of the '571 Patent, the '550 Patent, the '890 Patent, and the '731 Patent; and

(J)    Such further and other relief as the Court may deem proper and just.


Dated: October 2, 2025                                    Respectfully submitted,

                                                          */s/ Christopher E. Hanba*
                                                          Christopher E. Hanba
                                                          Texas Bar No. 24121391
                                                          chanba@princelobel.com
                                                          Ariana D. Pellegrino *
                                                          Michigan Bar P79104
                                                          apellegrino@princelobel.com
                                                          Joshua G. Jones
                                                          Texas Bar No. 24065517
                                                          jjones@princelobel.com
                                                          Brian D. Atkinson
                                                          Texas Bar No. 24036157
                                                          batkinson@princelobel.com
                                                            *  Not admitted in Texas

                                                          PRINCE LOBEL TYPE LLP
                                                          500 W. 2nd Street, Suite 1900
                                                          Austin, Texas 78701
                                                          Tel: (617) 456-8000

                                                          *Attorneys for Plaintiff*
                                                          *Alpha Modus, Corp.*